# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**TAVION APLES, ET AL.**                        **CIVIL ACTION**

**VERSUS**                                       **NO. 20-2451**

**ADMINISTRATORS OF THE TULANE**                 **SECTION D (3)**
**EDUCATIONAL TRUST, ET AL.**

## ORDER AND REASONS

Before the Court is the Tulane Defendants'[1] Motion to Dismiss.[2]  The Motion is opposed,[3] and the Tulane Defendants have filed a Reply.[4]  Before the Court is also Defendant Sodexo, Inc.'s Motion to Dismiss.[5]  The Motion is opposed,[6] and Sodexo has filed a Reply.[7]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court DENIES Tulane Defendants' Motion to Dismiss, GRANTS Sodexo, Inc.'s Motion to Dismiss and orders sanctions as discussed herein.

---

[1] The Tulane Defendants include The Administrators of the Tulane Educational Fund d/b/a Tulane University; Kirk Bouyelas in his official capacity as Chief of Police for Tulane Police Department; Lieutenant Denis Serena, individually and officially; Detective David Harris, individually and officially; Sergeant Brian Dew, individually and officially; Officer Joseph Elfer, individually and officially; and Officer Matthew Winchester, individually and officially.
[2] R. Doc. 22.
[3] R. Doc. 23.
[4] R. Doc. 28.
[5] R. Doc. 29.
[6] R. Doc. 31.
[7] R. Doc. 36.

## I.    BACKGROUND

This civil rights action arises out of an incident that took place on Tulane University's campus on September 6, 2019.  The following facts are drawn from Plaintiffs' Complaint,[8] and must be considered true for the purposes of this Motion.

Plaintiff Tavion Aples was a former employee of Sodexo, Inc, and was on Tulane's campus to pick up his final paycheck from Sodexo.[9]  Plaintiffs allege that an employee of Sodexo, named "John Doe Sodexo" or "Sodexo Doe" in the Complaint, alerted a Tulane University Police Department ("TUPD") officer that Aples would be coming to Tulane to pick up his final paycheck.[10]  At the time of the incident, Tulane University Police Department had secured an arrest warrant for Plaintiff on charges of obscenity and simple assault.[11]  Plaintiffs allege that the officer and Sodexo Doe "hatched a plan to arrest Plaintiff in the service alley between the Hertz Building on Tulane's Campus and the parking garage under the pretense that Sodexo Doe would not only be tendering Plaintiff's last paycheck but also conducting an exit interview."[12]  Plaintiff advised Sodexo Doe that he would have his minor child, T.A., Jr., with him when he went to pick up his paycheck.[13]

Plaintiffs allege that after Sodexo Doe identified Plaintiff, various Tulane Police Department officers confronted Aples and attempted to block Aples's exit into

---

[8] R. Doc. 1.
[9] *Id.* at 5 ¶ 4.
[10] *Id.* at 5 ¶ 5.
[11] *Id.* at 5 ¶ 4.
[12] *Id.*
[13] *Id.* at 5-6 ¶ 6.

the nearby service alley.[14]  Aples managed to successfully back out of the service alley without incident, and he placed his vehicle in drive gear to drive away.[15]  According to Plaintiffs, at that time a Tulane Police Department Officer fired multiple rounds into Aples's vehicle, striking Aples.[16]  He was taken to an emergency room and underwent surgery as a result of the gunshot wound.[17]

On September 9, 2020, Plaintiffs filed a Complaint against various defendants regarding the incident.[18]  Among these Defendants were Sodexo and Sodexo Doe.[19] Plaintiffs' Complaint alleged a civil rights claim under 28 U.S.C. § 1983 arising out of the incident.[20]  Plaintiffs did not serve any Defendant after filing their Complaint. On October 7, 2021, a Tulane employee emailed Plaintiffs' counsel introducing Tulane's counsel, who was copied on the email, noting that the Defendants associated with Tulane had not been served yet, and asking Plaintiffs' counsel to coordinate with Tulane Defendants' counsel regarding service.[21]  The record does not reflect that Plaintiffs' counsel responded to the email, and Plaintiffs' counsel did not serve any Defendant at that point.  On November 4, 2021, Tulane Defendants' counsel followed-up with Plaintiffs' counsel, stating "[p]lease advise of the status of service of the above-referenced lawsuit."[22]  The record does not reflect that Plaintiffs' counsel

---

[14] R. Doc. 1 at 6 ¶ 7.
[15] *Id*. at 6-7 ¶¶ 8-9.
[16] *Id*. at 6-7 ¶ 9.
[17] *Id*. at 7 ¶ 10.
[18] *See* R. Doc. 1.
[19] *See id*. at 4.
[20] *See id*.
[21] *See* R. Doc. 22-2 at 1-2.
[22] *Id*. at 1.

responded to the email, and Plaintiffs' counsel did not serve any Defendant at that point.

Ninety days after Plaintiffs filed their Complaint, the record did not reflect that any party had been served.  Accordingly, on December 15, 2020, Plaintiffs were Ordered to Show Cause on or before January 7, 2021 why Defendants, Kirk Bouyelas, Denis Serena, David Harris, Brian Dew, Joseph Elfer, Matthew Winchester, Sodexo, Inc., and/or Administrators of the Tulane Educational Fund should not be dismissed for failure to prosecute.[23]  Plaintiffs did not file a response to the Court's show cause order before January 7, 2021.  Accordingly, on January 11, 2021, the Court dismissed this action without prejudice and entered judgment pursuant to Federal Rule of Civil Procedure 4(m).[24]

Plaintiffs then moved for reconsideration of the Court's Judgment under Federal Rule of Civil Procedure 60(b),[25] arguing that their failure to respond to the Court's Order to Show Cause was the result of a calendaring error whereby counsel erroneously calendared the Show Cause Order for January 13, 2021 instead of January 7, 2021 and that they clearly intend to prosecute this case.  The Court granted the Motion for Reconsideration, finding that Plaintiffs had demonstrated excusable neglect under Rule 60(b)(1) for failing to respond to the Court's show cause order.[26]  The Court did not find, however, that Plaintiffs had shown good cause for failure to serve Defendants in a timely manner.  The Court stated:

---

[23] R. Doc. 4.
[24] R. Doc. 5.
[25] R. Doc. 6.
[26] R. Doc. 7.

> Plaintiffs' Motion does not address, however, the
> underlying issue that led to the Court's Judgment, namely,
> Plaintiffs' failure to properly serve Defendants in a timely
> manner or respond to the Court's Order to Show Cause.
> Indeed, the record currently does not reflect that Plaintiffs
> have made any effort to serve Defendants even though
> Plaintiffs instituted this action over four months ago.[27]

The Court therefore again ordered Plaintiffs to show cause why Defendants

should not be dismissed for failure to prosecute.  Only at this point, on January 12,

2021, did Plaintiffs Request that Summons be issued to Defendants and execute

service on Defendants.[28]  Plaintiffs' counsel responded to the Court's Order to Show

Cause, stating that he had "instructed [his] part-time paralegal to check service in

this case" and "did not realize the part-time paralegal did not know Civil Summonses

had to be drafted and Requests for Summons had to be filed with/received by the

Clerk's office."[29]  Plaintiffs' counsel also stated that on the day the Court initially

dismissed this matter, "he had intended to draft Civil Summons and file the requisite

Request for Summons upon arriving at the office after morning court hearings at

Criminal District Court."[30]  At no point did this Court find that Plaintiffs' explanation

demonstrated good cause for failure to serve Defendants.

Defendants[31] now move to dismiss Plaintiffs' Complaint under Federal Rule of

Civil Procedure 12(b)(5).[32]  Defendants argue that Plaintiffs cannot demonstrate good

cause for their delay in serving Defendants, and that his response shows at most

---

[27] *Id.* at 2.
[28] *See* R. Docs. 8 and 14 (Request of Summons), R. Doc. 11 and 18 (Summons Returned Executed).
[29] R. Doc. 15 at 2.
[30] *Id.*
[31] Because Tulane Defendants' and Sodexo's arguments under Federal Rule of Civil Procedure 12(b)(5) are largely similar, the Court addresses them together and refers to all Defendants collectively.
[32] R. Doc. 22 (Tulane Defendants); R. Doc. 31 (Sodexo Defendants).

simple inadvertence or mistake of counsel, which is insufficient.  Defendants also argue that because Plaintiffs filed their Complaint on the final day before their claims were prescribed, dismissal under Rule 12(b)(5) would bar Plaintiffs from re-filing their suit.  Accordingly, Defendants argue that the Court should evaluate whether the delay was caused by intentional conduct and whether it has prejudiced Defendants.  All Defendants contend that the facts demonstrate that Plaintiffs delay was intentional, and Sodexo also argues that it has been prejudiced by the extensive delay of service following the filing of a Complaint on the last day before the Complaint was time-barred.

Plaintiffs have filed Oppositions to both Motions.[33]  Plaintiffs first argue that the Court has already ruled on these issues in ruling on Plaintiffs' Motion for Reconsideration, and that ruling is therefore law of the case.  Plaintiffs next argue that Defendants cannot demonstrate that that the delay of service was intentional.  Moreover, Plaintiffs press that their Complaint was filed "well within" the prescriptive period because the state of Louisiana suspended the prescriptive period for 142 days due to various emergencies.  Plaintiffs also argue that their Complaint should not be dismissed for failure to state a claim.

Tulane Defendants have filed a Reply[34] in which they largely reiterate arguments made in their opening Motion.  They also argue that Plaintiffs mistake the Louisiana law regarding the suspension of the prescriptive period during 2020,

---

[33] R. Doc. 23 (Opposition to Tulane Defendants' Motion); R. Doc. 31 (Opposition to Sodexo's Motion).
[34] R. Doc. 28.

and that cases cited by Plaintiffs are irrelevant here.  Sodexo has filed a Reply[35] in which it makes similar arguments to Tulane Defendants' arguments.

Sodexo also moves to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6).  Sodexo argues that Plaintiffs fail to adequately allege that Sodexo acted under the color of state law (as is require for a Section 1983 claim), and that Plaintiffs fail to properly allege actions of Sodexo or Sodexo Doe which violate Plaintiffs' constitutional rights.  Sodexo further presses that Plaintiffs' allegations that a Sodexo employee "hatched a plan to arrest Plaintiff" also fail, as Plaintiffs fail to allege facts that Sodexo or a Sodexo employee conspired with state actors to deprive Plaintiffs of their constitutional rights.  Finally, Sodexo argues that it is well-established that identification of an individual to the police, which is seemingly the basis for the "hatched plan" here, does not convert a private actor to a state actor.

In their Opposition,[36] Plaintiffs argue that once a private citizen enters into a conspiracy to deprive a person of their rights, that person is vicariously liable for the acts of co-conspirators.  Plaintiffs argue that they have "clearly plead that Sodexo Doe conspired with the Tulane Police Department and willfully participated in its scheme to effect the open arrest warrant of Plaintiff Aples by ambush."[37]  Plaintiffs also argue that Sodexo ratified Sodexo Doe's actions by negotiating Aples's paycheck.  Finally, should the Court find Plaintiffs' allegations insufficient to state a claim, Plaintiffs seek leave to amend.  Sodexo has filed a Reply[38] in which it reiterates that Plaintiffs

---

[35] R. Doc. 35.
[36] R. Doc. 31.
[37] *Id*. at 3.
[38] R. Doc. 65.

fail to demonstrate an agreement to deprive Plaintiffs of their constitutional rights. Sodexo also argues that Plaintiffs have failed to demonstrate any constitutional violation as to T.A., and that Sodexo did not ratify Sodexo Doe's actions in "negotiating" Aples's paycheck as it was legally obligated to pay Aples's wages. In its Reply, Sodexo also re-urges its arguments in support of its Motion to Dismiss for Insufficient Service of Process, arguing that Plaintiffs' arguments, especially regarding interruption of prescription, are incorrect, illogical, and baseless.

## II.   LEGAL STANDARD

### A.   Legal Standard Under Rule 12(b)(5)

Federal Rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 90 days after the complaint is filed, the court--on motion or on its own after notice to the plaintiff--must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.[39]

Further, Rule 12(b)(5) allows a party to move to dismiss for "insufficient service of process."[40]  "To establish good cause, a plaintiff has the burden of demonstrating '*at least* as much as would be required to show excusable neglect . . . .'"[41]  Further "simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice . . . ."[42]

---

[39] Fed. R. Civ. P. 4(m).
[40] Fed. R. Civ. P. 12(b)(5).
[41] *Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008) (quoting *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)) (emphasis in original).
[42] *Winters*, 776 F.2d at 1306; *see also Lambert v. United States*, 44 F.3d 296, 299 (5th Cir. 1995).

When dismissal will likely bar future litigation due to the applicable statute of limitations, dismissal is reviewed under a heightened standard.  Specifically, a court must find at least one of three aggravating factors:  (1) delay caused by the plaintiff himself and not his attorney, (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.[43]  "A district court's 'dismissal with prejudice is warranted only where a clear record of delay or contumacious conduct by the plaintiff' exists and a lesser sanction would not better serve the interests of justice.'"[44]

## B.    Legal Standard Under Rule 12(b)(6)

To overcome a defendant's motion to dismiss, a plaintiff must plead a plausible claim for relief.[45]  A claim is plausible if it is pleaded with factual content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged.[46] But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[47]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff.[48]  However, the allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are

---

[43] *Millan v. USAA General Indem. Co.*, 546 F.3d 321, 325-26 (5th Cir. 2008).

[44] *Id.* at 326 (quoting *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir.1981)).

[45] *Romero v. City of Grapevine, Tex.*, 888 F. 3d 170, 176 (5th Cir. 2018) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[46] *Edionwe v. Bailey*, 860 F.3d 287, 291 (5th Cir. 2017) (citing *Iqbal*, 556 U.S. at 678).

[47] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F. 3d 1029, 1032 (5th Cir. 2010) (per curiam).

[48] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

true.[49]  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[50]

## III.   ANALYSIS

### A.   Motions to Dismiss under Rule 12(b)(5)

#### 1.   *Good Cause*

The first inquiry the Court must engage in is whether Plaintiff has shown "good cause" for his failure to timely serve Defendants, which caselaw defines as 'at least as much as would be required to show excusable neglect."[51]  Further "simple inadvertence or mistake of counsel or ignorance of the rules" is not sufficient to demonstrate excusable neglect.[52]  Here, Plaintiffs have not demonstrated excusable neglect.  Plaintiffs purported explanation is essentially that Plaintiffs' counsel's paralegal did not know the requirements of federal law, and that he improperly calendared the date by which to respond to the show cause order.  Putting aside various issues with this explanation, specifically that it only relates to the show cause order,[53] Plaintiffs do not even attempt to describe the failure to serve Defendants as anything other than "simple inadvertence or mistake of counsel or ignorance of the rules."  Accordingly, good cause does not exist for Plaintiffs' failure to serve Defendants.

---

[49] *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007).
[50] *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (internal citations omitted).
[51] *Newby v. Enron Corp.*, 284 F. App'x 146, 149 (5th Cir. 2008) (internal quotations omitted).
[52] *Winters*, 776 F.2d at 1306.
[53] As the Court discusses below, this explanation does not hold up under scrutiny.

Plaintiffs resist this conclusion by arguing that this Court's order granting their Motion to Reconsider included a finding that Plaintiffs have demonstrated good cause, and that finding is "law of the case" and binds the Court. Even assuming the law of the case doctrine applied here,[54] Plaintiffs misread the Court's prior order granting Plaintiffs' Motion for reconsideration. That order found excusable neglect under Rule 60(b)(1) and dealt *only* with Plaintiffs' failure to respond to the Court's show cause order. Indeed, the Court specifically found that Plaintiffs had not shown cause for their failure to properly serve Defendants.[55] Plaintiffs fail to address this significant issue. While Plaintiffs later filed a Response to the Court's second show cause order,[56] the Court has never found that Plaintiffs have shown good cause for failure to timely serve Defendants. The Court's order granting Plaintiffs' Motion for Reconsideration represented only the Court's caution to *sua sponte* dismiss this matter where Plaintiffs had provided at least some explanation for failing to respond to the Court's show cause order. Because it specifically found that Plaintiffs had not provided an explanation as to why they failed to serve Defendants timely, the Court's prior order is irrelevant to the instant inquiry.

---

[54] The law of the case doctrine does not apply here. *See United States v. Suarez*, 769 F. App'x 174, 175 (5th Cir. 2019) (explaining the application of the law of the case doctrine). And even if it did apply, that doctrine expresses only a general practice of courts, not a limit on their power. *See Coliseum Square Ass'n, Inc. v. Jackson*, 465 F.3d 215, 246 (5th Cir. 2006) (citing *Messinger v. Anderson*, 225 U.S. 436 (1912)).

[55] R. Doc. 7 at 2 ("Plaintiffs' Motion does not address, however, the underlying issue that led to the Court's Judgment, namely, Plaintiffs' failure to properly serve Defendants in a timely manner or respond to the Court's Order to Show Cause.").

[56] R. Doc. 15.

2. *Heightened Standard*

Where an applicable statute of limitations likely bars future litigation, a dismissal of claims under Rule 4(m) requires consideration of a heightened standard.[57]  A court must find at least one of three aggravating factors:  (1) delay caused by the plaintiff himself and not his attorney, (2) actual prejudice to the defendant; or (3) delay caused by intentional conduct.[58]

i. *Dismissal of Case*

Before determining whether dismissal is warranted under a heightened standard, the Court must first consider whether the heightened standard applies, *i.e.*, whether dismissal will bar future litigation because plaintiff's claims will be considered time-barred.  Federal courts hearing Section 1983 claims borrow the relevant statute of limitations from the forum state.[59]  Here, that is Louisiana's one-year prescriptive period for personal injury claims.[60]  The parties agree that, barring an suspension of the prescriptive period, Plaintiffs had until September 8, 2020 to file their Complaint.  The Court notes that this is the same day the Complaint was filed.[61]

Plaintiffs first argue that their claims became time-barred only on January 25, 2021, because prescription was suspended in Louisiana for 142 days as a result of the COVID-19 pandemic and Hurricane Laura.  As to the COVID-19 pandemic, Plaintiffs' argument ignores the relevant law and lacks merit.  It is true that the Louisiana

---

[57] *Millan v. USAA General Indem. Co.*, 546 F.3d 321, 325-26 (5th Cir. 2008).
[58] *Id.*
[59] *Wallace v. Kato*, 549 U.S. 384, 387 (2007).
[60] *McGregor v. Louisiana State University Bd. of Sup'rs*, 3 F.3d 850, 863 (5th Cir. 1993).
[61] *See* R. Doc. 1.

suspended prescription from March 17, 2020 until July 5, 2020 by executive order.[62]
But the legislature later narrowed that suspension, enacting La. R.S. 9:5829, which
provides: "the suspension or extension of these periods shall be limited and shall
apply only if these periods would have otherwise expired during the time period of
March 17, 2020, through July 5, 2020."[63]   Plaintiffs fail to either include or address
this law.   No subsequent executive order overrode this language, as the legislature
also provided with respect to the executives orders that "any extensions thereof are
hereby approved, ratified, and confirmed *subject to the provisions of this part*."[64]
Because Plaintiffs' claims would not have expired between March 17, 2020 and July
5, 2020, the period of prescription on their claims was never suspended by the
suspension related to COVID-19.[65]

Plaintiffs also point to a thirty-day suspension of prescription in light of the
damage caused by Hurricane Laura.   It is true that the Louisiana Supreme Court
suspended prescription for a period of thirty days running from August 21, 2020 until
September 30, 2020.[66]   Plaintiffs filed their Complaint on September 8, 2020, right in
the middle of that period.[67]   That suspension extended Plaintiffs' preemptive period

---

[62] *See* R. Docs. 32-1; 32-2.
[63] La. R.S. 9:5829.
[64] La. R.S. 9:5828(B) (emphasis added).
[65] *See* R. Docs. 32-1; 32-2.
[66] *See* R. Doc. 23-3.
[67] Hurricane Laura was a tragedy which occurred on August 27, 2020 that affected hundreds of thousands of Louisiana citizens, and the Louisiana Supreme Court's Order does not specify that the suspension is limited to any certain circuit or part of the state.   That being said, there is no reason to believe that Plaintiffs' counsel, operating four blocks away from the Courthouse in New Orleans, was impacted by a hurricane that greatly affected the western portion of the state.   That Plaintiffs' counsel was likely not impacted by the Hurricane is even clearer given that Plaintiffs' counsel filed the Complaint on the last possible day before it was prescribed, notwithstanding any suspension of the prescriptive period.   On these facts, Plaintiffs' counsel's invocation of this suspension period due to Hurricane Laura therefore seems disingenuous, at best.

at most thirty days, until October 8, 2020.  Accordingly, unless prescription was interrupted or suspended by this suit, dismissal will still result in Plaintiff's claims being time-barred.

Relevant here is Louisiana Civil Code article 3463, which provides that "[a]n interruption of prescription resulting from the filing of a suit in a competent court . . . continues as long as the suit is pending.  Interruption is considered never to have occurred if the plaintiff abandons . . . or fails to prosecute the suit at trial."[68]  Plaintiffs point to Louisiana Civil Code article 3466, which states that "[i]f prescription is interrupted, the time that has run is not counted.  Prescription commences to run anew from the last day of interruption."[69]  But if interruption of prescription is determined to "never have occurred" by Plaintiffs' current suit, then Louisiana Civil Code Article 3466 has no relevance here.

The Louisiana Supreme Court has held that a lawsuit dismissed for failure to serve still interrupts prescription, "unless the court finds that failure to request service was due to the plaintiff's bad faith."[70]  In *Bordelon*, the Louisiana Supreme Court rejected the argument that lacking "good cause" necessarily constitutes "bad faith."[71]  Other Louisiana courts have defined "bad faith" in this context as "more

---

[68] La. Civ. Code art. 3463.

[69] La. Civ. Code art. 3466.

[70] *Bordelon v. Medical Center of Baton Rouge*, 871 So. 2d 1075, 1084 (La. 2003).  Tulane Defendants reasonably raise the argument that the rule articulated in *Bordelon*, that prescription is interrupted by suits even when they are dismissed for failure to serve, does not necessarily apply in federal suits.  *See Hawkins v. McHugh*, 46 F.3d 10 (5th Cir. 1995).  Because the Court finds that Plaintiffs acted in bad faith in failing to serve, this issue need not be decided here.  Tulane Defendants have preserved the argument should this matter be appealed.

[71] *Bordelon*, 871 So. 2d at 1082 ("We also reject defendants' arguments that a finding of lack of 'good cause' for untimely service requiring dismissal under La. C.C.P. art. 1201 equals 'bad faith' under La. R.S. 9:5801 such that interruption of prescription is considered to never have occurred.").

than mere bad judgment or negligence; it implies the conscious doing of a wrong for dishonest or morally questionable motives."[72]  The Court therefore finds that this test is directly related to the same considerations that the Court must consider under the heightened standard for dismissing this matter for failure of service; namely, if Plaintiffs' delay in service not only lacked good cause, but was intentional, then the delay was caused in bad faith.  Accordingly, Plaintiffs would not be able to rely on Louisiana Civil Code article 3466, because prescription would "never have occurred." In this suit, such a finding will result in a dismissal that will time-bar Plaintiffs' claims, as the prescriptive period ran, at the latest, on October 8, 2020.

ii.    *Intentional Delay and Prejudice*

The Court now turns to whether Plaintiffs' delay in serving Defendants was intentional.  The Court first turns to Plaintiffs' counsel's explanation for the delay in serving Defendants.  Counsel avers that the delay is solely due to the fact that he is using a part-time paralegal who is not familiar with the requirements of federal court regarding the issuance of summons, and is more familiar with Louisiana state-court proceedings, where service of a petition is requested in the body of the petition.[73] Counsel provides no support for his contention, and the Complaint includes no such request for service.[74]  This explanation is also contradicted by various facts in the record which have now been brought to the Court's attention:  Plaintiffs' counsel was alerted twice by Defendants or Defendants' counsel that service had not been

---

[72] *Coker v. Morris*, 855 So. 2d 916, 920 (La. App. 2 Cir. 2003).

[73] *See* R. Doc. 15.

[74] *See* R. Doc. 1.

effectuated, and Defendants or Defendants' counsel specifically inquired as to the status of service.  Further, the Court's show cause order in December would have alerted Plaintiffs' counsel that Defendants had not been served.  If the delay in service had simply been the result of a miscommunication between Plaintiffs' counsel and his paralegal, he was certainly given ample notice, several times, to correct such a miscommunication.

Moreover, Plaintiffs' counsel essentially admitted that he did not plan to serve Defendants until the last possible moment, well after he was obligated to serve them. He states "[p]rior to receiving this Honorable Court's Order dismissing Plaintiffs's case [on January 11, 2021], undersigned intended to draft Civil Summons and file the requisite Request for Summons upon arriving at the office after morning court hearings at Criminal District Court."[75]  Apparently, despite an obligation under the federal rules, two inquiries specifically regarding the status of service from defense counsel, and a show cause order from this Court, Plaintiff's counsel had not even bothered to draft summonses until four days after the Court had ordered Plaintiffs' to show cause for failure to serve.  Chalking this delay up to a miscommunication with a paralegal strains credulity.[76]

Plaintiffs' counsel had a recognized obligation under the Federal Rules to serve Defendants within ninety days of filing suit.[77]  The facts in the record are as follows:

---

[75] R. Doc. 15 at 2.
[76] Defendants point to a reason Plaintiffs' counsel may have wanted to delay these proceedings: Aples's ongoing criminal matters.  Tulane Defendants note that the outcome of those matters may have a substantial effect on this litigation.  Although Plaintiffs argue that the outcome of the criminal proceedings "currently has zero hearings on the instant litigation as a whole" Plaintiffs also argue that certain outcomes of the criminal proceedings could impact this litigation.  *See* R. Doc. 23 at 5-6.
[77] Fed. R. Civ. P. 4(m).

Plaintiffs' counsel filed suit on September 9, 2020, on the last day before Plaintiffs' claims prescribed,[78] and he did not request service of any Defendant at that time; Plaintiffs' counsel was emailed by Defendants in October regarding service, and he did not serve Defendants at that time; Defendants' counsel followed up regarding service with Plaintiff's counsel via email in November, and counsel did not serve Defendants at that time; the Court issued a show cause order in December requiring Plaintiffs' counsel to explain why he had not complied with the Federal Rules regarding service of Defendants, and he did not serve Defendants at that time; the deadline for Plaintiffs' counsel to respond to the Court's show cause order was in January, and he did not serve Defendants then.  It simply defies reality to suggest that such delay, with repeated, monthly reminders from both opposing counsel and the Court, was not wholly intentional and strategic on the part of Plaintiffs' counsel. The Court therefore finds that this delay was intentional and amounts to bad faith.[79] At the heart of this matter, Plaintiffs' counsel filed suit in September and then proceeded to willfully, and perhaps strategically, ignore this matter until the Court had already dismissed the case.  The Federal Rules require more.  Justice does as well.

Moreover, the Fifth Circuit has found that prejudice existed where (as here), plaintiffs filed their complaint right before the statute of limitations ran, and then

---

[78] Disregarding the suspension issued due to Hurricane Laura, which the record indicates did not affect Plaintiffs' counsel as he filed the Complaint within the thirty-day suspension period.
[79] Counsel is directed to the definition of bad faith in *Coker v. Morris*, 855 So. 2d 916, 920 (La. App. 2 Cir. 2003), cited within, *See supra,* n.72.

delayed service.[80]  The Fifth Circuit held that a delay in service when a complaint is filed near the statute of limitations deadline is "very prejudicial by its very nature" because a "potential defendant who has not been served is entitled to expect that he will no longer have to defend against the claim."[81]  Accordingly, Defendants are also prejudiced here.

Although the Court has found that Plaintiffs' delay was intentional and prejudicial, it retains discretion to fashion the appropriate remedy.  Importantly, the Fifth Circuit has held that dismissal is only appropriate where there is a "clear record of delay" and "contumacious conduct."[82]  The Fifth Circuit has defined a "clear record of delay" as "longer than just a few months."[83]  Here, the delay in service was only four months, a shorter period than found in most cases where dismissal is considered the appropriate remedy.  Moreover, the fact that Plaintiffs served Defendants immediately after they filed their Motion for Reconsideration offers a glimmer of hope that they lack the "stubborn resistance to authority" that is required to find contumacious conduct.[84]  Most importantly, the Fifth Circuit has held that dismissal with prejudice is appropriate only when "a lesser sanction would not better serve the interests of justice."[85]  Here, the Court finds that a lesser sanction, namely, the imposition of Defendants' attorneys fees for their work on the Motions to Dismiss under Rule 12(b)(5), prompted by Plaintiffs' bad faith, is an appropriate remedy that

---

[80] *Gartin v. Par Pharmaceutical Companies, Inc.*, 289 F. App'x 688, 694 (5th Cir. 2008).

[81] *Id.* (Citing *Veazey v. Young's Yacht Sale and Service, Inc.*, 644 F.2d 475, 478 (5th Cir. 1981).

[82] *Fedex Customer Information Servs., Inc. v. D&D Polymer Co., Inc.*, No. 12-11, 2014 WL 12872331, at *7 (citing *Millan*, 546 F.3d at 326).

[83] *Millan*, 546 F.3d at 327.

[84] *See McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988).

[85] *Millan*, 546 F.3d at 326 (quoting *Gray v. Fid. Acceptance Corp.*, 634 F.2d 226, 227 (5th Cir.1981)).

would serve to deter Plaintiffs' conduct short of dismissal of the action with prejudice. Accordingly, as disturbed as the Court is by the actions of Plaintiffs' counsel in this matter, which has created needless work for opposing counsel and the Court, the Court will instead impose the lesser sanction. Within five working days of this Order, Defendants' may file a Motion for Attorney's Fees detailing the amounts they seek for their work on the instant Motions.[86] Within five days of such a Motion, Plaintiffs may respond challenging the reasonableness of such fees (though not the Court's decision to award fees itself).

### B.      Motion to Dismiss Under Rule 12(b)(6)

The Court next turns to Defendant Sodexo's Motion to Dismiss under Rule 12(b)(6). The thrust of Sodexo's argument is that neither Sodexo nor Sodexo Doe were "state actors" and therefore cannot be subject to a 42 U.S.C. § 1983 claim. "To state a cause of action under section 1983 the [plaintiff] must allege that the person who deprived him of a federal right was acting under color of law."[87] "For a private citizen . . . to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors."[88] The Fifth Circuit has held that "a non-state actor may be liable under 1983 if the private citizen was a 'willful participant in a joint activity with the State or its agents.'"[89] Accordingly, to allege a Section 1983 claim against a private citizen, a plaintiff must allege "(1) an

---

[86] Sodexo should endeavor to only seek the portion of the attorney's fees attributable to the portion of its Motion under Rule 12(b)(5), not the portion of its Motion under 12(b)(6).

[87] *Priester v. Lowndes County*, 354 F.3d 414, 420 (5th Cir. 2004) (citing *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir. 1994)).

[88] *Id.* (citing *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir. 1989)).

[89] *Id.* (quoting *Cinel*, 15 F.3d at 1343).

agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights."[90]

Here, Plaintiffs have failed to allege a conspiracy between Sodexo Doe and Tulane Defendants.[91]   Plaintiffs allege that there was an outstanding warrant against Plaintiff Aples for criminal offenses, that a TUPD officer and Sodexo Doe "hatched a plan" to arrest Aples in the service alley, and that Sodexo Doe gave the TUPD officer a signal positively identifying Aples.[92]   Although Plaintiffs seek to characterize Doe's actions as nefarious, at bottom Plaintiffs allege that Sodexo Doe was providing TUPD information regarding Aples's location so that they could execute an arrest warrant.  It is black-letter law that "private parties do not become state actors merely by calling upon law enforcement for assistance."[93]   Moreover, "private citizens who give information to law enforcement do not become state actors under Section 1983 even when the information is used to effect an arrest."[94]

Because Plaintiffs' allegations regarding Sodexo Doe's agreement to enter a "conspiracy" was simply his agreement to provide information to law enforcement about Aples's whereabouts, Sodexo Doe cannot properly be characterized as a state

---

[90] *Id.* (citing *Cinel*, 15 F.3d at 1343).

[91] Although the Court largely addresses here Sodexo Doe's actions, Plaintiffs plainly fail to state a claim against Sodexo.  To the extent Sodexo's liability is premised on Sodexo Doe's actions, "the doctrine of *respondeat superior* does not apply in § 1983 actions." *Marquez v. Quarterman*, 652 F. Supp. 2d 785 (E.D. Tex. 2009) (citing *Monell v. Dep't of Social Servs.*, 463 U.S. 658 (1978)).  Plaintiffs also allege that "Sodexo ratified Sodexo Doe's actions and further [sic] the aforementioned conspiracy when it negotiated the paycheck Sodexo Doe tendered to Plaintiff Aples."  R. Doc. 31 at 4.  But negotiation of the amount of a paycheck does not amount to ratification of Sodexo Doe's actions of informing the police of Aples's whereabouts, much less "furthering" a "conspiracy."

[92] R. Doc. 1 at 5-6 ¶¶ 5, 8.

[93] *Cook v. City of Shreveport*, No. 11-809, 2011 WL 3665000, at *4 (W.D. La. Aug. 19, 2011).

[94] *Id. See also Farrell v. Landrieu*, No. 14-722, 2016 WL 1714227 (E.D. La. Apr. 1, 2016) (same).

actor.  A case cited by Plaintiffs, *Boquet v. Belanger*,[95] is not to the contrary.  There, the court found that a plaintiff had adequately alleged that a private citizen had entered an agreement with law enforcement to violate the plaintiff's rights.  But the private-citizen defendant in *Boquet* not only contacted law enforcement about Plaintiff, but physically participated in the plaintiff's arrest by "providing an extra pair of hands."[96]  Such a "degree of direct participation" by Sodexo Doe is absent in this case.[97]  Further, Plaintiffs agree that there was an outstanding arrest warrant for Plaintiff Aples.   Thus, Plaintiffs have failed to allege that there was any agreement to commit an illegal act. Instead, the Complaint states that the purpose was to effectuate an arrest pursuant to an outstanding warrant (which Plaintiffs refer to as an arrest by ambush).

Plaintiffs also seek leave to amend his Complaint.[98]  Generally, "[t]he Court should freely give leave when justice so requires."[99]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[100]  However, "i[t] is within the district court's discretion to deny a motion to amend if it is futile."[101]  An amendment is futile

---

[95] No. 14-2228, 2015 WL 1650255, at *4 (E.D. La. Apr. 14, 2015).
[96] *Id.*
[97] *Id.*
[98] *See* R. Doc. 31 at 4.
[99] Fed. R. Civ. P. 15(a)(2).
[100] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).
[101] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872-73 (5th Cir. 2000).

when "the amended complaint would fail to state a claim upon which relief could be granted."[102]   Here, Plaintiffs are silent regarding what additional facts they would plead to remedy their pleading deficiency.  Moreover, Sodexo is not liable under any theory of respondeat superior for Sodexo Doe's actions.  The Court has already spoken regarding a finding of Plaintiffs' bad faith. Additionally, and importantly in this matter, the Court finds that granting Plaintiffs leave to amend their Complaint would cause undue delay in this matter which, as clearly stated within, has been sitting dormant due to Plaintiffs' (in)actions since its filing. Exercising the discretion afforded under Fed. R. Civ. P. 15 and the pertinent jurisprudence, the Court finds that granting Plaintiffs leave to amend their Complaint would be futile in this case and would fail to cure the deficiencies raised by Defendant Sodexo's Motions to Dismiss.

## IV.   CONCLUSION

**IT IS HEREBY ORDERED** that Tulane Defendants' Motion to Dismiss is **DENIED** and Defendant Sodexo's Motion to Dismiss is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiffs pay reasonable attorneys' fees to Defendants for their work on the Motions to Dismiss under 12(b)(5) as sanctions to be determined by the Court following additional briefing.

New Orleans, Louisiana, March 24, 2021.

**WENDY B. VITTER**
**UNITED STATES DISTRICT JUDGE**

---

[102] *Id.*