## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**TAIVON APLES, ET AL.**                                    **CIVIL ACTION**

**VERSUS**                                                  **NO. 20-2451**

**ADMINISTRATORS OF THE TULANE**                            **SECTION: D (4)**
**EDUCATIONAL TRUST, ET AL.**

## ORDER AND REASONS

Before the Court is a Motion for Partial Dismissal Pursuant to Rule 12(b)(6) of

the Federal Rules of Civil Procedure[1] filed by the Tulane Defendants.[2]  The Plaintiffs,

Taivon Aples[3] and T.A., Jr., oppose the Motion.[4]  The Tulane Defendants filed a Reply

in support of their Motion.[5]  After careful consideration of the parties' memoranda,

the record, and the applicable law, the Court **GRANTS** the Defendants' Motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The following facts are drawn from Plaintiffs' Complaint, and must be

considered true for the purposes of this Motion.  This civil rights action arises out of

---

[1] R. Doc. 40.
[2] The Tulane Defendants include The Administrators of the Tulane Educational Fund d/b/a Tulane University ("Tulane" or "Tulane University"); Kirk Bouyelas ("Bouyelas") in his official capacity as Chief of Police for Tulane Police Department; Lieutenant Denis Serena ("Serena"), individually and officially; Detective David Harris ("Harris"), individually and officially; Sergeant Brian Dew ("Dew"), individually and officially; Officer Joseph Elfer ("Elfer"), individually and officially; and Officer Matthew Winchester ("Winchester"), individually and officially.
[3] Plaintiff Aples passed away from issues unrelated to this matter on October 25, 2022, after the filing of the Opposition Memorandum.  *See* R. Doc. 104-4.  This Court subsequently granted the Plaintiffs' Motion to Substitute Proper Party Plaintiffs on July 31, 2023, substituting Alneshia Polite, on behalf of her minor child, T.A., Jr., and Paulina Bryant, on behalf of her minor child, T.B., as the Plaintiffs in this matter.  *See* R. Doc. 109.  Both T.A., Jr. and T.B. are the minor children of Taivon Aples.  For consistency purposes, since Aples is referred to as "Plaintiff" in the Complaint, the Court refers to the deceased, Aples, as the "Plaintiff" in this matter.
[4] R. Doc. 48.
[5] R. Doc. 52.

an incident that took place on Tulane University's campus on September 6, 2019.[6]
Plaintiff Taivon Aples ("Aples"), a former employee of Sodexo, Inc., was on Tulane's
campus on September 6, 2019 to pick up his final paycheck from Sodexo.[7]  Plaintiffs
allege that an employee of Sodexo, named "John Doe Sodexo" or "Sodexo Doe" in the
Complaint, alerted a Tulane University Police Department ("TUPD") officer that
Aples would be coming to Tulane to pick up his final paycheck.[8]  At the time of the
incident, Tulane University Police Department had secured an arrest warrant for
Aples on charges of obscenity and simple assault.[9]  Plaintiffs allege that the officer
and Sodexo Doe "hatched a plan to arrest Plaintiff in the service alley between the
Hertz Building on Tulane's Campus and the parking garage under the pretense that
Sodexo Doe would not only be tendering Plaintiff's last paycheck but also conducting
an exit interview."[10]  Plaintiff advised Sodexo Doe that he would have his minor child,
T.A., Jr., with him when he went to pick up his paycheck.[11]  Upon information and
belief, Sodexo Doe relayed this information to Lt. Serena.[12]

Plaintiffs allege that after Sodexo Doe identified Aples, various Tulane Police
Department officers confronted Aples and attempted to block Aples's exit into the
nearby service alley.[13]  Aples managed to successfully back out of the service alley
without incident, and he placed his vehicle in drive gear to drive away.[14]  According

---

[6] R. Doc. 1.
[7] *Id.* at ¶ 4.
[8] *Id.* at ¶ 5.
[9] *Id.* at ¶ 4.
[10] *Id.*
[11] *Id.* at ¶ 6.
[12] *Id.*
[13] *Id.* at ¶ 7.
[14] *Id.* at ¶¶ 8–9.

to Plaintiffs, at that time a Tulane Police Department Officer, Detective David Harris, fired multiple rounds into Aples's vehicle, striking Aples.[15]  Aples was taken to an emergency room and underwent surgery as a result of the gunshot wound.[16]

On September 8, 2020, Plaintiffs filed a Complaint against various defendants regarding the incident.[17]  Plaintiffs' Complaint alleges civil rights claims for false arrest, illegal seizure, and excessive force under 28 U.S.C. § 1983 arising out of the incident.[18]  This Court previously granted Defendant Sodexo, Inc.'s Motion to Dismiss and denied the Tulane Defendants' Rule 12(b)(5) Motion to Dismiss.[19]  Accordingly, only the Tulane Defendants remain as defendants in this suit.

The Tulane Defendants now move for partial dismissal of the claims against them.[20]  Defendants' Motion to Dismiss covers five categories of claims: (1) all claims brought by T.A., Jr. and Alneisha Polite; (2) all official capacity claims brought against the individual officers; (3) all claims brought against Tulane University; (4) claims for unreasonable search and seizure brought against all officers; and (5) claims for excessive force brought against Defendants Dew, Serena, Elfer, and Winchester.

The Defendants first argue that all claims brought by Alneisha Polite on behalf of her minor child, T.A., Jr., should be dismissed because the Complaint is devoid of allegations that would support a claim by T.A., Jr.  Second, Defendants argue that all "official capacity" claims brought against the individual officers should be

---

[15] *Id.* at ¶ 9.
[16] *Id.* at ¶ 10.
[17] *See* R. Doc. 1.
[18] *See id.*
[19] *See* R. Doc. 37.
[20] R. Doc. 40.

dismissed as duplicative of the claims brought against Tulane University. They assert that the official capacity claims are akin to claims brought against Tulane University as an entity, and as such the official capacity claims brought against the individual officers are unnecessary and duplicative.

Third, Defendants argue that the claims brought against Tulane University should be dismissed for two reasons: (1) Tulane University cannot be held liable through the doctrine of respondeat superior because that doctrine does not apply in Section 1983 actions; and (2) Plaintiffs have not provided sufficient factual support for the existence of an official TUPD policy, which is necessary to sustain a Section 1983 action. Defendants argue that Plaintiffs' assertion that the individual officers were "policy makers" is insufficient to support a finding of an official policy. They further argue that Plaintiffs' claims fail to the extent that Plaintiffs rely on a deliberate-indifference standard because the allegation that Tulane University failed to train its officers is insufficient. They also assert that, notwithstanding the foregoing, the claims against Tulane University are likely barred either because Tulane is a private university, or, if it or its police department perform any state functions, by sovereign immunity.

Fourth, Defendants argue that all claims premised on unreasonable seizure and false arrest should be dismissed because Plaintiffs have not challenged probable cause for the warrant nor have they alleged that the officers' tactics in attempting to execute the arrest warrant were objectively unreasonable or violative of a clearly

established constitutional rights. Accordingly, Defendants argue that they are entitled to qualified immunity.

Finally, Defendants argue that the claims for excessive force brought against Defendants Serena, Dew, Elfer, and Winchester should be dismissed. Defendants note that Plaintiffs did not allege that Officer Dew used any force at all, and therefore the claims against him should be dismissed. They further argue that the claims against Defendants Serena, Winchester, and Elfer related to those Defendants drawing their firearms should be dismissed because Aples's injury—a gunshot wound—could not have resulted from the mere drawing of firearms. Likewise, they argue that the claims against Defendants Serena and Winchester related to their attempt to break Aples's car window must fail for the same reason. They further argue that the use of force was objectively reasonable given that Aples was (1) in a car, while the officers were on foot, (2) evading lawful arrest, and (3) in a crowded campus setting. They argue that Plaintiffs cannot identify any clearly established law such that the officers would be on notice that their conduct was illegal. Accordingly, Defendants contend that the excessive force claims should be dismissed on the basis of qualified immunity even if the officers' use of force could be characterized as clearly excessive or objectively unreasonable.

Plaintiffs filed an Opposition in response to the Motion.[21] First, they argue that the claims brought by Alneisha Polite on behalf of T.A. Jr., should not be dismissed because the Complaint alleges that T.A., Jr.'s constitutional rights were

---

[21] R. Doc. 48.

violated as he was also the victim of an illegal seizure and excessive force. Plaintiffs assert further that T.A. Jr. "suffered trauma that will affect him the rest of his life."[22] Second, Plaintiffs argue that all official capacity claims brought against the individual Defendants should remain because under the *Ex parte Young* doctrine, private parties may sue individual state officers to obtain prospective relief. Third, Plaintiffs argue that the claims against Tulane University should not be dismissed because Tulane University is a state actor that has a history of unconstitutional practices in its police force. Plaintiffs point to two news articles demonstrating this alleged history of unconstitutional police practices. Plaintiffs assert that they will be able to show an unconstitutional policy after discovery is taken, and that "[d]efendants are trying to argue a motion for summary judgment as if discovery has been exchanged and depositions have been taken."[23]

Fourth, Plaintiffs argue that the unreasonable seizure claims should not be dismissed because the issue of whether the seizure was unreasonable will be argued by both parties in litigation. They assert that the facts underlying Aples' prior arrest for obscenity and simple assault are "outlandish" and "fantastical" and, accordingly, the officers did not act reasonably in attempting to execute the arrest warrant by use of force. Plaintiffs point to *Torres v. Madrid*[24] wherein the U.S. Supreme Court held that a fleeing suspect was "seized" at the moment she was shot by a police officer. Plaintiffs argue they have alleged sufficient facts showing the seizure was

---

[22] *Id.* at p. 3.
[23] *Id.* at p. 5.
[24] 141 S. Ct. 989, 995 (2021).

unreasonable, pointing to the facts as alleged in the Complaint: that five armed officers attempted to surround his vehicle with weapons drawn, and two of them attempted to break his windows.

Fifth, Plaintiffs argue that the excessive force claims should not be dismissed because, like the unreasonable seizure claims, dismissal is premature at this juncture. Plaintiffs assert that "[n]o reasonable person would say that a traffic stop should be conducted by numerous officers trying to shatter glass onto a six-year-old and then shoot through the passenger side, where said six-year-old is."[25] Accordingly, Plaintiffs argue their allegations are sufficient to survive a pre-discovery motion to dismiss.

The Defendants filed a Reply in support of their Motion.[26] Initially, Defendants point out that Plaintiffs improperly rely on materials outside of their Complaint. Defendants contend that in deciding a Rule 12(b)(6) motion to dismiss, a court may only consider the pleadings and documents outside of the pleadings when they are attached to the complaint, referenced in the complaint, and central to a plaintiff's claims. Accordingly, Defendants argue that the assertions premised on (1) a citation to The Tulane Hullabaloo website,[27] (2) an online news article from 2018,[28] and (3) a series of seven assertions concerning the arrest of Aples[29] should be disregarded.

---

[25] *Id.* at p. 14.
[26] R. Doc. 52.
[27] *See* R. Doc. 48 at p. 6 n.13, 14.
[28] *See id.* at pp. 7–10, n.15.
[29] *See id.* at pp. 11–12.

Second, Defendants argue that the Complaint does not support a claim for excessive force against Defendants Dew, Serena, Elfer, and Winchester because the two allegations of excessive force levied against them—drawing weapons (Serena, Elfer, and Winchester) and attempting to break Aples' car windows (Serena and Winchester)—if true, are not unreasonable.  Likewise, they assert that they are entitled to qualified immunity because Plaintiffs have not identified a clearly established law such that these Defendants would be put on notice that their conduct was unlawful.

Third, Tulane Defendants argue that Plaintiffs' allegations related to their unreasonable search and seizure claims do not support a plausible claim for relief because Plaintiffs do not, and cannot, challenge probable cause.  Regarding Plaintiffs' reliance on *Torres v. Madrid*, Defendants assert that decision was narrowly confined to the determination that a plaintiff is seized when he or she is struck by a bullet and that the *Torres* court expressly left open questions regarding the reasonableness of the seizure.

Fourth, Defendants argue that the claims against Tulane University and the related official capacity claims against the individual officers should be dismissed because Plaintiffs did not allege any unconstitutional TUPD policy.  Rather, they argue, Plaintiffs merely allege that the individual defendants were "policy-maker[s] with respect to the arrest procedure employed upon Plaintiff."[30]  Defendants argue that this allegation is insufficient to support a finding of an official TUPD policy

---

[30] R. Doc. 1 at ¶ 15.

which is necessary to establish *Monell* liability.  Finally, Defendants reiterate that the Complaint is confined to allegations of deprivations of Taivon Aples' rights. Accordingly, Defendants argue that the claims brought by Alneisha Polite on behalf of T.A. Jr. should be dismissed because "plaintiffs simply did not allege the factual basis for the claims asserted [by him]."[31]

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a defendant can seek dismissal of a complaint, or any part of it, for failure to state a claim upon which relief may be granted.[32]  To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[34]  But, no matter the factual content, a claim is not plausible if it rests on a legal theory that is not cognizable.[35]  In ruling on a motion to dismiss, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the non-moving party.[36]  The Court, however, is not bound to accept as true conclusory allegations, unwarranted factual inferences, or legal

---

[31] R. Doc. 52 at p. 7.
[32] Fed. R. Civ. P. 12(b)(6).
[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[34] *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Ashcroft*, 556 U.S. at 678) (quotation marks omitted).
[35] *Shandon Yinguang Chem. Indus. Joint Stock Co., Ltd. v. Potter*, 607 F.3d 1029, 1032 (5th Cir. 2010).
[36] *Midwest Feeders, Inc. v. Bank of Franklin*, 886 F.3d 507, 513 (5th Cir. 2018).

conclusions.[37]  "Dismissal is appropriate when the complaint on its face shows a bar to relief."[38]

A § 1983 plaintiff alleging *Monell* liability against a municipality faces a "heightened pleading requirement" as to any allegations of a municipal custom or policy.[39]  "A § 1983 plaintiff must plead specific facts with sufficient particularity to meet all the elements of recovery."[40]  Although a § 1983 plaintiff asserting a *Monell* claim "is not required to single out the specific policymaker in his complaint," the plaintiff must "plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker."[41]

In deciding a Rule 12(b)(6) motion to dismiss, a court is generally prohibited from considering information outside the pleadings but may consider documents outside of the complaint when they are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims.[42]  The Court can also consider matters of public record and matters subject to judicial notice.[43]

---

[37] *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).
[38] *Cutrer v. McMillan*, 308 Fed. App. 819, 820 (5th Cir. 2009) (quotation and internal quotation marks omitted).
[39] *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).
[40] *Id.* (citing *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985)).
[41] *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016); *accord McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023).
[42] *Maloney Gaming Mgmt., LLC v. St. Tammany Parish*, 456 Fed. Appx. 336, 340–41 (5th Cir. 2011).
[43] *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodaux, Inc.*, No. CIV.A. 10-4443, 2013 WL 1513406, at *3 (E.D. La. Apr. 11, 2013).

## III.    ANALYSIS

### A.    Claims Asserted on Behalf of T.A., Jr.

The Defendants move to dismiss any and all claims asserted by Taivon Aples and Alneisha Polite on behalf of their minor son, T.A., Jr., for failing to satisfy the Rule 8 pleading requirements.    Plaintiffs respond that they stated a claim for excessive force and illegal seizure in their Complaint on behalf of T.A., Jr. and that T.A., Jr., while not shot, "suffered trauma that will affect him the rest of life."[44]    The Court agrees with the Defendants that the Complaint is devoid of any factual allegations sufficient to support a plausible claim for relief by T.A., Jr.    Although the Complaint names T.A., Jr.—Plaintiff Taivon Aples's minor child—as a Plaintiff, the Complaint contains no specific allegations as to how the Defendants allegedly violated T.A., Jr.'s rights against unreasonable seizure, false arrest, and excessive force.    Indeed, the first line of the Complaint refers only to Aples as "Plaintiff."[45]    The Complaint then repeatedly references "Plaintiff" in the singular and does not provide any details regarding T.A., Jr. other than the fact that he was in the front passenger seat of Aples's car at the time of the incident.[46]    That fact alone does not support the claims asserted in the Complaint.    Notably, the Complaint makes no mention of any force ever used against T.A., Jr.[47]    Moreover, as discussed in greater detail below, Aples fails to state a plausible claim for false arrest and illegal seizure and, insofar

---

[44] R. Doc. 48 at p. 3.

[45] R. Doc. 1.

[46] *See* R. Doc. 1 at ¶ 6; *id.* at ¶ 11 ("Plaintiff alleges that he was the victim of excessive force, to wit: a gunshot to the abdomen."); *id.* at ¶ 14 ("The conduct of Defendants deprived Plaintiff of his rights, privileges, and immunities secured by the Constitution . . . .").

[47] *See id.* at ¶ 11 ("Plaintiff alleges that he was the victim of excessive force, to wit: a gunshot to the abdomen.").

as T.A., Jr. bases his claims upon those of his father, T.A., Jr.'s claims also fail as a matter of law.  Plaintiffs' vague, undeveloped, and speculative claims and assertions are insufficient to satisfy the Rule 8 pleading requirements.  The Court dismisses any claims asserted on behalf of T.A., Jr. against all Defendants.[48]

## B.    Official Capacity Claims

Official capacity suits are a "way of pleading an action against an entity of which an officer is an agent."[49]  As long as the governmental entity receives notice and an opportunity to respond, official capacity suits are "in all respects other than name, to be treated as a suit against the entity."[50]  An official capacity suit "is *not* a suit against the official personally, for the real party in interest is the entity."[51]

The Fifth Circuit has consistently held that claims against governmental entities and claims against government officials in their official capacities are redundant.[52]  Accordingly, courts in this district routinely dismiss official capacity claims against individuals that are duplicative of claims brought against governmental entities.[53]  However, "separate claims brought against an official [in

---

[48] To be clear, the Court dismisses only those claims originally brought by Alneisha Polite and Taivon Aples on behalf of their minor child, T.A., Jr., and does not address, at this time, the survival claims brought by Alneisha Polite on behalf of T.A., Jr.  Those subsequent claims were not the subject of this Motion for Partial Dismissal.

[49] *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[50] *Id.*

[51] *Id.*

[52] *Graham v. Hodge*, 619 Fed. App. 394 (5th Cir. 2015); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Flores v. Cameron Cnty.*, 92 F.3d 258, 261 (5th Cir. 1996); *see also Lafreniere Park Found. v. Broussard*, 221 F.3d 804, 810 (5th Cir. 2000).

[53] *See, e.g., Lightell v. Walker*, No. 20-672, 2021 WL 1063066, at *6 (E.D. La. Mar. 19, 2021); *Mahon v. Pelloat*, No. 20-2396, 2021 WL 848190, at *3 (E.D. La. Mar. 5, 2021); *Muslow v. Bd. of Supervisors of Louisiana State Univ. & Agric. & Mech. Coll.*, No. 19-11793, 2020 WL 4785047, at *6 n.27 (E.D. La. Aug. 18, 2020); *Swear v. Lawson*, 288 F. Supp. 3d 669, 700 (E.D. La. 2018).

his individual capacity] and his entity in the same action are permitted and governed by the general rules of pleading."[54]

To resist this conclusion, Plaintiffs argue that the Supreme Court's holding in *Ex parte Young*[55] allows them to pursue Tulane and the individual officers in their official capacities simultaneously. Plaintiffs' reliance on *Ex parte Young* is misplaced for a host of reasons. The *Ex parte Young* doctrine allows suit against state officers in their official capacities for prospective relief notwithstanding the Eleventh Amendment.[56] As an initial matter, Tulane asserts no Eleventh Amendment bar to this suit. Second, to the extent Plaintiffs seek monetary damages for their alleged harms, *Ex parte Young* is inapplicable; *Ex parte Young* governs only *prospective injunctive* relief, which was not requested here.[57] And third, there is no need to assert a claim under *Ex parte Young* against an officer when a party can bring a *Monell* claim against a governmental entity that is not a state being sued in its own name. Indeed, in explaining the "basic distinction" between personal and official-capacity actions, the Supreme Court has instructed: "There is no longer a need to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory

---

[54] *Swear*, 288 F. Supp. 3d at 700.

[55] 209 U.S. 123 (1908).

[56] *See, e.g.*, *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407, 414 (5th Cir. 2004).

[57] *See NiGen Biotech, L.L.C. v. Paxton*, 804 F.3d 389, 394 (5th Cir. 2015) ("A final prerequisite of *Ex parte Young* is that 'the relief sought must be declaratory or injunctive in nature and prospective in effect.'" (quoting *Saltz v. Tenn. Dep't of Emp't Sec.*, 976 F.2d 966, 968 (5th Cir. 1992))); *Yul Chu v. Mississippi State Univ.*, 901 F. Supp. 2d 761, 774 (N.D. Miss. 2012) ("*Ex Parte Young* does not allow Section 1983 suits for damages against a state."). The Court further notes that the damages Plaintiffs seek are not "ancillary" to the injunctive relief sought. *See Fontenot v. McCraw*, 777 F.3d 741, 753 (5th Cir. 2015).

relief."[58]  Because Plaintiffs have already sued the respective "local government"—here, Tulane University—its official capacity claims against Bouyelas, Serena, Harris, Dew, Elfer, and Winchester are duplicative of that suit. Accordingly, as described above, the law requires that Plaintiffs' official capacity claims be dismissed.

## C.    Individual Capacity Claims

Before discussing the individual claims, the Court notes that the Tulane Defendants do not challenge the excessive force claim against Defendant Harris, as Harris is the only Defendant alleged to have shot Aples.[59]  Accordingly, the Court does not address the excessive force claim against Harris at this juncture.  That claim remains pending.

The doctrine of qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[60]  Qualified immunity shields government officials from civil liability so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[61]  This protection covers "mere mistakes in judgment,"[62] "regardless of whether the

---

[58] *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (internal citations omitted).

[59] R. Doc. 40-1 at p. 11 n.7.

[60] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

[61] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) ("Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.").

[62] *Butz v. Economou*, 438 U.S. 478, 479 (1978).

government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'"[63]

Once the qualified immunity defense is raised, the plaintiff bears the burden of proving the defendants are not entitled to qualified immunity.[64] "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity."[65] Vicarious liability does not apply to Section 1983 suits, "so each official must have independently violated" a claimant's rights.[66]  Each defendant's actions must be considered individually, even if they act in unison.[67]

The plaintiff "must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.' "[68]  A court may address these prongs in whichever order it sees fit.[69]

At the Rule 12(b)(6) stage, then, the first prong of the qualified immunity analysis requires the Court—viewing the facts in the light most favorable to the plaintiff—to determine whether the plaintiff has alleged a violation of his

---

[63] *Pearson*, 555 U.S. at 231 (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).
[64] *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019).
[65] *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012).
[66] *Shaw*, 918 F.3d at 417 (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).
[67] *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007).
[68] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)).
[69] *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

constitutional or statutory rights.[70]  The second prong requires the Court—viewing the facts in the light most favorable to the plaintiff—to determine whether the right allegedly violated was "clearly established."  "When deciding whether the right allegedly violated was 'clearly established,' [a] court asks whether the law so clearly and unambiguously prohibited the conduct that every reasonable official would understand that what he is doing violates the law."[71]  In other words, precedent existing at the time of the challenged conduct "must have placed the statutory or constitutional question beyond debate."[72]

### i.    False Arrest

To prevail on the Fourth Amendment false arrest claim, Aples "must sufficiently allege (1) that he was arrested, and (2) the arrest did not have the requisite probable cause."[73]  If probable cause exists, a plaintiff has no claim for false arrest.[74]  A valid arrest warrant insulates the arresting officer from liability premised on an argument that the officer did not have probable cause. "[I]f facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision [on probable cause] breaks the chain of causation for false arrest, insulating the initiating party."[75]

---

[70] *See Trevino v. Hinz*, 751 Fed. App. 551, 553 (5th Cir. 2018).

[71] *Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013); *see also Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) ("A government official's acts are not objectively unreasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights.").

[72] *al-Kidd*, 563 U.S. at 741.

[73] *Rhodes v. Prince*, 360 Fed. App. 555, 558 (5th Cir. 2010).

[74] *See Clark v. Thompson*, 850 Fed. App. 203, 210 (5th Cir. 2021) ("The 'constitutional torts' of false arrest, unreasonable seizure, and false imprisonment also require a showing of no probable cause." (quoting *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001))).

[75] *Arizmendi v. Gabbert*, 919 F.3d 891, 897 (5th Cir. 2019).

However, even if an independent magistrate approves a warrant application, "a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes 'a false statement knowingly and intentionally, or with reckless disregard for the truth' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'"[76]  "Likewise, the intentional or reckless omission of material facts from a warrant application may amount to a Fourth Amendment violation."[77]

Here, Plaintiffs' Complaint asserts that "at the time of the incident, TUPD had secured an arrest warrant for Plaintiff on charges of obscenity and simple assault" and that "[t]hose charges are currently pending in Orleans Parish Criminal District Court under case number 547-900."[78]  Plaintiffs do not allege that the arresting officer recklessly or maliciously represented or omitted material information to procure the arrest warrant.  Absent those allegations, the officers presumably had probable cause to execute the arrest.[79]

Seemingly aware of this hurdle, Plaintiffs respond in their opposition asserting that the facts surrounding Aples's alleged obscenity charge are "outlandish," "fantastical," "ridiculous," and "bombastic."[80]  Even if the Court were to consider these

---

[76] *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)); *accord Joseph v. City of New Orleans*, No. CV 22-1333, 2023 WL 3569122, at *8 (E.D. La. May 18, 2023) (Vitter, J.).

[77] *Kohler v. Englade*, 470 F.3d 1104, 1113 (5th Cir. 2006) (citing *Hale v. Fish*, 899 F.2d 390, 400 n. 3 (5th Cir. 1990)).

[78] R. Doc. 1 at ¶ 4 n.1.

[79] *See Winfrey*, 901 F.3d at 494 (holding that to establish a claim for false arrest based on a warrant-based arrest, the plaintiff "must present evidence that [the officer who requested the warrant], through material omissions or otherwise, made 'a false statement knowingly and intentionally, or with reckless disregard for the truth.'") (quoting *Franks*, 438 U.S. 154, 155 (1978)).

[80] R. Doc. 48 at pp. 11–12.

assertions, they would still be insufficient to state a plausible claim for relief. Plaintiffs can only state a plausible claim for warrant-based false arrest upon allegations that, in acquiring the arrest warrant, (1) the affiant made false statements or material omissions, and (2) the false statements or omissions were necessary to the finding of probable cause.[81]  Plaintiffs have not made any such showing.  Because they did not so allege, Plaintiffs failed to state a plausible claim for false arrest upon which relief can be granted.  Accordingly, the Court dismisses the Fourth Amendment false arrest claims against Defendants Harris, Dew, Serena, Elfer, and Winchester.

### ii.   Unreasonable Seizure

To state a claim for unreasonable seizure, a plaintiff must sufficiently allege (1) that he was seized and (2) that such seizure was unreasonable.  Under the Fourth Amendment, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained."[82]

Recently, in *Torres v. Madrid*, the Supreme Court held that an individual is seized upon being shot by a police officer, whether or not the individual continues to flee after being shot.[83]  "The application of physical force to the body of a person with intent to restrain is a seizure, even if the force does not succeed in subduing the person."[84]  Accordingly, "a seizure occurs when an officer shoots someone" with the

---

[81] *See Winfrey*, 901 F.3d at 494; *accord Hale v. Fish*, 899 F.2d 390, 402 (5th Cir. 1990) (denying qualified immunity where affidavit submitted to magistrate "contain[ed] material misstatements and omissions [of exculpatory evidence] of such character that no reasonable official would have submitted it.").
[82] *United States v. Mendenhall*, 446 U.S. 544, 553 (1980).
[83] 141 S. Ct. 989 (2021).
[84] *Id.* at 994.

objective intent to restrain movement.[85]  A seizure by force "lasts only as long as the application of force."[86]  In other words, a seizure executed by shooting occurs at "the instant that the bullets str[ike]."[87]  According to the Complaint, "Det. Harris fired multiple rounds into the passenger side of Plaintiffs' vehicle . . . striking Plaintiff in the abdomen."[88]  Accordingly, Aples was seized by Detective Harris at the moment the bullet struck him, despite the fact that Aples evaded arrest.

However, the same logic does not apply to so-called "show of authority" seizures.  In contrast to "physical force" seizures, a "show of authority" seizure only constitutes a seizure if the plaintiff submits to it.[89]  Here, it is undisputed that Aples did not submit to any show of authority.  Plaintiffs assert that "[a]fter successfully backing out of the service alley without incident and without touching Det. Harris' unmarked F-150 . . . Mr. Aples put the vehicle in gear and proceeded to drive away."[90]  Even in the light most favorable to the Plaintiffs, the facts as alleged in the Complaint do not show that Defendants Dew, Serena, Elfer, or Winchester *ever* seized Aples. As noted earlier, the Complaint makes clear that "Det. Harris fired multiple rounds into the passenger side of Plaintiffs' vehicle."[91]  The Complaint does not allege that any

---

[85] *Id.* at 994, 998.

[86] *Id.* at 999 (citing *California v. Hodari D.*, 499 U.S. 621, 625 (1991)).

[87] *Id.*; *see also Hodari D.*, 499 U.S. at 629 (holding that the Fourth Amendment is not triggered until the moment a person is actually seized).

[88] R. Doc. 1 at ¶ 9.  In their response to the Motion, the Plaintiffs contend for the first time that they "cannot be certain that Harris was the only shooter."  R. Doc. 48 at p. 14.  The Court accepts as true the allegations in the Complaint and will not consider the purely speculative, and contradictory, claims made in response to the Motion to Dismiss.

[89] *Torres*, 141 S. Ct. at 995 ("The common law distinguished the application of force from a show of authority, such as an order for a suspect to halt. The latter does not become an arrest unless and *until the arrestee complies with the demand*.") (emphasis added).

[90] R. Doc. 1 at ¶ 9.

[91] R. Doc. 1 at ¶ 9.

other named defendant fired any shot. Defendants Dew, Serena, Elfer, and Winchester did not make physical contact with Aples, and it is undisputed that Aples never submitted to any show of authority. Accordingly, all illegal seizure claims against Defendants Dew, Serena, Elfer, and Winchester must be dismissed.

Further, insofar as the Plaintiffs have alleged a claim for unreasonable seizure against Harris separate from their excessive force claim, that claim must too be dismissed. The constitutional tort of unreasonable seizure "require[s] a showing of no probable cause."[92] As discussed above, the Defendants had probable cause to arrest Aples.[93] Accordingly, although Harris did "seize" Aples within the meaning of the Fourth Amendment, Plaintiffs fail to state a claim for *unreasonable* seizure.

### iii.   Excessive Force

"To bring a § 1983 excessive force claim under the Fourth Amendment, a plaintiff must first show that she was seized."[94] The Defendants assert that, because "only Defendant Harris is alleged to have fired his gun . . . Plaintiff has arguably failed to articulate any basis for asserting constitutional claims against the other individual Defendants."[95] The Court agrees. Without a seizure, there can be no excessive force claim under the Fourth Amendment.[96] According to the facts as alleged by Plaintiffs, which this Court accepts as true and considers in the light most favorable to the Plaintiffs, and considering Plaintiffs' claims as to each individual

---

[92] *Brown v. Lyford*, 243 F.3d 185, 189 (5th Cir. 2001).
[93] *See* Section III.C.i, herein.
[94] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).
[95] R. Doc. 40-1 at p. 15.
[96] *Flores*, 381 F.3d at 396.

defendant, Defendants Dew, Serena, Elfer, and Winchester did not seize Aples under the Fourth Amendment.  Only Harris seized Aples.  Therefore, the excessive force claims against Defendants Dew, Serena, Elfer, and Winchester must also be dismissed.[97]

To defeat qualified immunity, Plaintiffs are required to allege that each Defendant violated a statutory or constitutional right.[98]  To state a plausible claim for false arrest, Plaintiffs were required to challenge probable cause, which they failed to do.  Likewise, to state a claim for unreasonable seizure and excessive force against Defendants Dew, Serena, Elfer, and Winchester, Plaintiffs were required to allege facts supporting a showing of a Fourth Amendment seizure, which they also failed to do.  Accordingly, the False Arrest claims against all individual Defendants, and the Unreasonable Seizure and Excessive Force claims against Defendants Dew, Serena, Elfer, and Winchester are hereby dismissed.

## D.    Claims Against Tulane

The Court next turns to Plaintiffs' claims against Tulane University as an entity.  Although Tulane is not a local government, the parties agree that any claim against Tulane is governed by the factors established by the Supreme Court in *Monell v. Department of Social Services of the City of New York*[99] for state and municipal liability. Before addressing the *Monell* factors, the Court notes that a significant

---

[97] *See Torres*, 141 S. Ct. at 1001 ("[A] seizure by acquisition of control involves either voluntary submission to a show of authority or the termination of freedom of movement."); *see also Velazquez v. City of Westwego*, No. CV 20-2332, 2021 WL 1212722, at *5 (E.D. La. Mar. 31, 2021) ("Each defendant's actions must be considered individually, *even if they act in unison*.") (citing *Meadours v. Ermel*, 483 F.3d 417, 421–22 (5th Cir. 2007).

[98] *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011).

[99] 436 U.S. 658 (1978).

portion of Plaintiffs' Opposition on this point focuses on whether Tulane can be sued under Section 1983 as a local or state entity.[100]  While this is a threshold question, Tulane concedes that it can be sued under Section 1983 for the purposes of the instant Motion.[101]  Accordingly, the Court will assume—as Tulane does at this stage—that Tulane may be sued under Section 1983 and need not address that issue here.[102]

To establish *Monell* liability under Section 1983, a Plaintiff must prove three elements: "a policymaker; an official policy; and a violation of Constitutional rights whose 'moving force' is the policy or custom."[103]  "[T]he unconstitutional conduct must be directly attributable to the municipality through some sort of official action or imprimatur."[104]  In other words, a Section 1983 claim cannot be predicated on *respondeat superior* for "isolated unconstitutional actions by municipal employees."[105]  Instead, the alleged unconstitutional conduct must be "directly attributable" to an official policy.[106]  To survive a motion to dismiss, a § 1983 plaintiff alleging municipal liability under *Monell* is required to "plead *specific* facts with sufficient particularity"[107] "that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized

---

[100] *See* R. Doc. 48 at pp. 5–6.

[101] *See* R. Doc. 40-1 at p. 9 ("The arguments in this Motion assume, without conceding, that Tulane University is subject to Section 1983 . . . .").

[102] *See Maniaci v. Georgetown Univ.*, 510 F. Supp. 2d 50, 61–63 (D.D.C. 2007) (explaining that private universities may be subject to *Monell* liability under § 1983 and collecting cases).

[103] *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (quoting *Monell v. Dep't. of Social Services*, 436 U.S. 658, 694 (1978)).

[104] *Piotrowski*, 237 F.3d at 578.

[105] *Id.*

[106] *Id.* at 585 n.16 (citing *Monell*, 436 U.S. at 692).

[107] *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992) (citing *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985)) (emphasis added).

policymaker."[108]  For the reasons discussed below, the Plaintiffs' Complaint fails to satisfy that standard.

A plaintiff may establish the existence of an official municipal policy in one of three ways: by showing (1) "written policy statements, ordinances, or regulations,"[109] (2) that a policymaking official "perform[ed] the specific act that forms the basis of the § 1983 claim,"[110] or (3) "practices so persistent and widespread as to practically have the force of law."[111]  The first category is not relevant here as Plaintiffs have provided no allegations or any argument regarding any written policies, regulations, or ordinances of the Tulane Defendants.  Plaintiffs arguably attempt to establish the existence of an official policy through categories (2) and (3), which the Court will address in turn.

Regarding the second category, the acts of policymaking officials, Plaintiffs allege in sweeping conclusory terms that Defendants Bouyelas, Serena, Harris, Dew, Elfer, and Winchester were all "policy-making official[s] of Tulane and the TUPD, with respect to policies and practices involving the facts herein"[112] and that Serena, Harris, Dew, Elfer, and Winchester were policymakers "with respect to the arrest procedure employed upon Plaintiff."[113]

---

[108] *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016).
[109] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 214–15 (quoting *Alvarez v. City of Brownsville*, 904 F.3d 382, 389–90 (5th Cir. 2018)).
[110] *Id.* at 215 (quoting *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017))
[111] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691; *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).
[112] R. Doc. 1 at ¶ 1 (b–g).
[113] R. Doc. 1 at ¶ 15.

The Supreme Court has held that, in determining whether a plaintiff has sufficiently alleged that a particular individual or governmental body is a policymaker, the trial court "must identify those officials or governmental bodies who speak with final policymaking authority for the local governmental actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue."[114] "A true policymaker must 'decide the goals for a particular [University] function and devise the means of achieving those goals.'"[115]

With that in mind, and considering each defendant separately, the Complaint fails to offer any support that Defendants Harris, Dew, Elfer, or Winchester were policymakers as none of these Defendants "speak[s] with final policymaking authority."[116] As alleged, these Defendants acted under the direction of a superior officer, indicating that they do not have *final* policymaking authority. Indeed, the Complaint refers to Chief Bouyelas as the individual with the authority to "render final decisions regarding arresting policies and practice, including but not limited to use of force policies, of the TUPD, including without limitation the protocol used herein in the detention, arrest, and shooting of criminal suspects."[117] Plaintiffs' conclusory allegations that Harris, Dew, Elfer, or Winchester were "policy-makers" is unsupported by any further factual allegations in the Complaint.

---

[114] *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989).
[115] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 (quoting *Bennett v. City of Slidell*, 728 F.2d 762, 769 (5th Cir. 1984)).
[116] *Id.*
[117] R. Doc. 1 at ¶ 1(b).

Plaintiffs point out two individuals who, assuming the factual allegations as true, are plausible[118] policymakers: Lieutenant Denis Serena, who is alleged to have "hatched a plan to arrest Plaintiff,"[119] and Chief Kirk Bouyelas, who is alleged to have been "the individual charged with the duty and granted the authority to render final decisions regarding arresting policies and practices, including but not limited to use of force policies, of the TUPD, including without limitation the protocol used herein in the detention, arrest, and shooting of criminal suspects."[120]  Accordingly, the Court considers whether Plaintiffs have pleaded specific facts demonstrating that either Bouyelas or Serena promulgated an official policy through their acts which caused Plaintiffs' injury.

As for Bouyelas, Plaintiffs generically allege that, although Bouyelas was not "directly involved" in the apprehension of Plaintiff Aples, he nonetheless "was informed of the attempted arrest and shooting by Defendants and ratified their actions."[121]  Plaintiffs provide no further allegations as to Bouyelas.  A policymaker's act of ratifying unconstitutional conduct may constitute an official policy.  "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final."[122]

---

[118] The Court does not determine whether Plaintiffs have alleged sufficient facts to establish that either Serena or Bouyelas are "policymakers."  At this stage, the Plaintiffs are not required to single out a particular policymaker.  *See Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016). Accordingly, the Court assumes, for the sake of the Motion, that both Serena and Bouyelas are "policymakers" for the purpose of determining whether Plaintiffs have plausibly alleged *Monell* liability against Tulane and therefore the Court proceeds with its analysis.

[119] R. Doc. 1 at ¶ 5.

[120] *Id.* at ¶ 1(b).

[121] *Id.* at ¶ 16.

[122] *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017) (quoting *Peterson v. City of Fort Worth*, 588 F.3d 838, 854 (5th Cir. 2009)), *as revised* (Mar. 31, 2017).

Ratification, however, is limited to "extreme factual situations."[123]  The Court finds that Plaintiffs' ratification allegations do not amount to an "extreme factual situation[]" sufficient to state a plausible claim for relief.  Moreover, the generic, conclusory ratification allegation is insufficient to satisfy the heightened pleading standard for *Monell* liability.[124]

In *Fraire v. City of Arlington*, the Fifth Circuit affirmed the dismissal of a Section 1983 claim against a municipality premised on a similar "ratification" allegation.[125]  The dispute in *Fraire* was over whether a police officer's shooting of a suspect was a constitutional violation.  After the shooting, the city police department conducted an internal affairs investigation which concluded the officer did not violate any use-of-force policy.  The claimant alleged municipal liability on this investigation, which the claimant characterized as a ratification of the officer's acts.  The Fifth Circuit affirmed the district court's dismissal of the municipal liability claims because the claimant made "only general accusations against the city and failed to plead with particularity."[126]  Because the municipal liability claim against Tulane premised on Bouyelas' alleged ratification is even more generic than the claim in *Fraire*, the Court finds that Plaintiffs' claim of Bouyelas' alleged ratification is insufficient to support a finding of an official policy.

---

[123] *Id.* (quoting *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 755 (5th Cir. 2009)).
[124] Likewise, the Complaint fails to provide any allegation that Bouyelas was "deliberately indifferent" in his "failure to control [his] subordinates in a way likely to result in violation of constitutional rights." *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 (5th Cir. 2019).
[125] *Fraire v. City of Arlington*, 957 F.2d 1268, 1272–73 (5th Cir. 1992).
[126] *Id.* at 1272.

As for Lieutenant Serena, assuming *arguendo* that Serena was a policymaker, the Court finds that the Complaint fails to provide specific factual allegations demonstrating that any act of Serena caused Plaintiffs' injury. "An unconstitutional policy may be found when a policymaker performs the *specific act* that forms the basis of the § 1983 claim."[127] Here, however, the Complaint contains no factual allegations linking Serena to the specific act—the shooting of Aples—that forms the basis of the Plaintiffs' remaining § 1983 claims.[128] As discussed above, the Complaint fails to adequately allege a claim for false arrest against any Defendant or for illegal seizure against Defendants Serena, Elfer, Dew, and Winchester. Against the individual Defendants, only the claims for illegal seizure and excessive force against Defendant Harris—the only Defendant alleged to have fired a weapon and struck Aples—remain pending. All claims against Serena have been dismissed. Because the only viable § 1983 claim at this stage is one for unreasonable seizure and excessive force solely against Defendant Harris, the Complaint fails to allege specific facts showing that Serena performed the specific action constituting the basis for the § 1983 claim.[129] Moreover, and for the same reasons as discussed with reference to Plaintiffs' ratification claim against Bouyelas, there is no allegation or argument from the Plaintiffs that Serena ratified the actions of his subordinate, Harris, such that his

---

[127] *Davidson v. City of Stafford, Texas*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 482, 484–85 (1986); *Howell*, 827 F.3d at 528; *Anderson v. City of McComb*, 539 Fed. App. 385, 388 n.2 (5th Cir. 2013)), *as revised* (Mar. 31, 2017).
[128] *See id.* (finding no official policy where a policymaker, the police chief, was not alleged to have performed the arrest of the plaintiff which formed the basis of the § 1983 claim).
[129] Plaintiffs have stated a plausible § 1983 claim solely against Harris, a non-policymaker. While the Court recognizes that the Plaintiffs need not identify the specific policymaker at the pleading stage, whether or not another plausible policymaker exists is irrelevant because only Harris committed the specific act which forms the basis of Plaintiffs' claims.

ratification constituted an official policy.  Nor, for that matter, is there any allegation that Serena was "deliberately indifferent" in his "failure to control [his] subordinates in a way likely to result in violation of constitutional rights."[130]  Accordingly, the Court finds that the Complaint fails to adequately allege that Serena committed a specific act sufficient to constitute an official municipal policy.

Regarding the third category under which a claimant may establish the existence of an official policy by alleging "practices so persistent and widespread as to practically have the force of law,"[131]  Plaintiffs' Complaint fails.  Plaintiffs do not allege the existence of any widespread practices and instead focus solely on the specific incident of Taivon Aples's arrest.  Plaintiffs' attempt to remedy this defect in its Response Brief with citation to outside sources is misplaced.[132]  A plaintiff generally may not introduce additional evidence for a court's consideration in a response to a Rule 12(b)(6) motion without converting the motion into one for summary judgment.[133]  Moreover, these documents are not "(1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims" such that it would be appropriate for the Court to consider them.[134]  Accordingly, the Court will not consider these outside sources.  Further, because these sources make up the entirety of Plaintiffs' allegations ostensibly purporting to show persistent and

---

[130] *Webb v. Town of Saint Joseph*, 925 F.3d 209, 217 (5th Cir. 2019).

[131] *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *Monell*, 436 U.S. at 691; *Pembaur*, 475 U.S. at 480–481; *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–168 (1970)).

[132] R. Doc. 48 at pp. 6–10.

[133] *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

[134] *Maloney Gaming Mgmt., L.L.C. v. St. Tammany Par.*, 456 Fed. Appx. 336, 340 (5th Cir. 2011) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

widespread practices, the Court finds that Plaintiffs fail to allege facts sufficient the existence of an official policy on that basis.

Finally, the Plaintiffs allege that Tulane University "failed to properly train and/or supervise TUPD."[135]  Plaintiffs further allege that TUPD "failed to properly train its officers."[136] These claims, too, fail.

"[A local government's] culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[137]  To succeed on a Section 1983 negligent training claim, a plaintiff must show that: "(1) the training procedures were inadequate; (2) the . . . policymaker was deliberately indifferent in adopting the training policy; and (3) the inadequate training policy directly caused [the plaintiff's] injury."[138]  In order to show deliberate indifference, a plaintiff must "'ordinarily' . . . show a pattern of similar constitutional violations by untrained employees."[139] "Allegations of an isolated incident are not sufficient to show the existence of a custom or policy."[140]

Here, Plaintiffs' Complaint is utterly devoid of any allegations of "similar constitutional violations."  Plaintiffs' Complaint focuses entirely on the single incident of Taivon Aples' arrest.  And, for the reasons previously stated, the Court does not consider the outside material referenced in Plaintiffs' Opposition in the

---

[135] R. Doc. 1 at ¶ 11.

[136] *Id.*

[137] *Clyce v. Hunt Cnty., Tex.*, 515 Fed. Appx. 319, 323 (5th Cir. 2013) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

[138] *Carnaby v. City of Hous.*, 636 F.3d 183, 189 (5th Cir. 2011).

[139] *Connick*, 563 U.S. at 62–63 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown,* 520 U.S. 397, 409 (1997)).

[140] *Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992).

analysis of this Motion.  Accordingly, to the extent Plaintiffs state a *Monell* claim under a negligent training and/or supervision theory, those claims necessarily fail.

Plaintiffs have failed to "plead facts that show that the defendant or defendants acted pursuant to a specific official policy, which was promulgated or ratified by the legally authorized policymaker."[141]  Indeed, Plaintiffs have failed to sufficiently plead the existence of an official policy, let alone one that was the "moving force" behind the alleged constitutional violation.  The Court dismisses all claims of *Monell* liability against Tulane University.

**E.    Leave to Amend**

The Plaintiffs have not requested leave to amend their Complaint should the Court grant the Defendants' Motion to Dismiss.  While this Court will "freely give leave [to amend] when justice so requires,"[142] leave to amend "is by no means automatic."[143]  In exercising its discretion, this Court may consider such factors as "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment."[144]  "I[t] is within the district court's discretion to deny a motion to

---

[141] *Groden v. City of Dallas*, 826 F.3d 280, 282 (5th Cir. 2016); *accord McClelland v. Katy Indep. Sch. Dist.*, 63 F.4th 996, 1011 (5th Cir. 2023).
[142] Fed. R. Civ. P. 15(a).
[143] *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994) (citation omitted).
[144] *Nolan v. M/V SANTE FE*, 25 F.3d 1043 (5th Cir. 1994) (citing *Gregory v. Mitchell*, 635 F.2d 199, 203 (5th Cir. 1981)).

amend if it is futile."[145]  "An amendment is futile if it would fail to survive a Rule 12(b)(6) motion."[146]

Neither party addressed these factors in their briefing.  The Fifth Circuit has held that Rule 15(a) applies to express requests to amend a pleading and that "[a] formal motion is not always required, so long as the requesting party has set forth with particularity the grounds for the amendment and the relief sought."[147]  The Fifth Circuit has further clarified that "a bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which the amendment is sought, *cf.* Fed. R. Civ. P. 7(b)—does not constitute a motion within the contemplation of Rule 15(a)."[148]

Plaintiffs here have made mention whatsoever of leave to amend their Complaint.  The Court will not grant relief that has not been requested by a party.  Accordingly, the Court does not grant leave for the Plaintiffs to amend their Complaint.

## IV.    CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that the Tulane Defendants' Motion to Dismiss[149] is **GRANTED.**

---

[145] *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000).

[146] *Marucci Sports, L.L.C. v. National Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted).

[147] *U.S. ex rel. Willard v. Human Health Plan of Texas Inc.*, 336 F.3d 375, 387 (5th Cir. 2003) (*citing* Fed. R. Civ. P. 7(b)(1), 15(a); *Edwards v. Occidental Chemical Corp.*, 892 F.2d 1442, 1445–46 (9th Cir. 1990)).

[148] *Willard*, 336 F.3d at 387 (quoting *Confederal Mem'l Ass'n, Inc. v. Hines*, 995 F.2d 295, 299 (D.C. Cir. 1993)).

[149] R. Doc. 40.

**IT IS FURTHER ORDERED** that any and all claims asserted by Taivon Aples and Alneisha Polite on behalf of their minor child, T.A., Jr., against all Defendants are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' 42 U.S.C. § 1983 claims for false arrest and unreasonable seizure against all Defendants are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' 42 U.S.C. § 1983 claims for excessive force against individual Defendants Serena, Dew, Elfer, and Winchester are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' 42 U.S.C. § 1983 claims against individual Defendants Bouyelas, Serena, Dew, Elfer, Harris, and Winchester in their official capacity are **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Plaintiffs' 42 U.S.C. § 1983 claims against Tulane University are **DISMISSED with prejudice**.

New Orleans, Louisiana, December 14, 2023.

**WENDY B. VITTER**
**United States District Judge**